1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   FRAISURE EARL SMITH,

11              Plaintiff,                    No. 2:11-cv-142-EFB P

12        vs.

13   SOLANO COUNTY, et al.,

14              Defendants.                   <u>ORDER</u>

15   _____/

16        Plaintiff is a prisoner proceeding without counsel in an action brought under 42 U.S.C.

17   § 1983.  This case is before the undersigned pursuant to the parties' consent.  *See* 28 U.S.C.

18   § 636; *see also* E.D. Cal. Local Rules, Appx. A, at (k)(1)-(2).  Pending before the court is

19   defendants' January 2, 2013 motion to for summary judgment.  ECF No. 42.  For the reasons

20   explained below, the motion must be granted.

21   **I.     The Complaint**

22        This action proceeds on the verified complaint filed January 14, 2011.  ECF No. 1.

23   Plaintiff's allegations are simple:

24        I filed a grievance against "Physician Assistant" Corey and requested she be
          removed from being in charge of my medical care because 1.) she was not a
25        qualified doctor to care for cancer patients 2.) she cancelled necessary radiation
          appointments which showed negligence of life sustaining medical care.  K.
26        Cordero and Dr. Firman, the medical supervisor and medical director for Solano

1

> County Jail removed PA Corey from my care, yet even when I put in request to be seen by Dr. Firman, their angered response for having P.A. Corey replaced by Dr. Firman was no medical treatment for approximately 2.5 months.

*Id.* at 3.[1]  Plaintiff further alleges that "the lack of proper medical care . . . almost caused my death" and that plaintiff had to endure "excruciating pain and suffering" in receiving emergency treatment at an outside hospital.  *Id.*

## II.   Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

---

[1] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

1   party meets its burden with a properly supported motion, the burden then shifts to the opposing

2   party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

3   *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

4           A clear focus on where the burden of proof lies as to the factual issue in question is

5   crucial to summary judgment procedures.  Depending on which party bears that burden, the party

6   seeking summary judgment does not necessarily need to submit any evidence of its own.  When

7   the opposing party would have the burden of proof on a dispositive issue at trial, the moving

8   party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

9   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

10  which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

11  24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

12  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

13  depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

14  should be entered, after adequate time for discovery and upon motion, against a party who fails

15  to make a showing sufficient to establish the existence of an element essential to that party's

16  case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

17  circumstance, summary judgment must be granted, "so long as whatever is before the district

18  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56[(a)],

19  is satisfied."  *Id.* at 323.

20          To defeat summary judgment the opposing party must establish a genuine dispute as to a

21  material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

22  that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

23  at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

24  law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

25  material is determined by the substantive law applicable for the claim in question.  *Id.*  If the

26  opposing party is unable to produce evidence sufficient to establish a required element of its

1   claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

2   an essential element of the nonmoving party's case necessarily renders all other facts

3   immaterial."  *Celotex*, 477 U.S. at 322.

4         Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

5   the court must again focus on which party bears the burden of proof on the factual issue in

6   question.  Where the party opposing summary judgment would bear the burden of proof at trial

7   on the factual issue in dispute, that party must produce evidence sufficient to support its factual

8   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

9   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

10  or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

11  for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

12  demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

13  that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

14  477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

15        The court does not determine witness credibility.  It believes the opposing party's

16  evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

17  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

18  proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

19  *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

20  dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

21  at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

22  (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational

23  trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

24  475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

25        Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

26  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

1   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2   'genuine issue for trial.'" *Id.*  If the evidence presented and any reasonable inferences that might

3   be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

4   issue.  *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine

5   dispute over an issue that is determinative of the outcome of the case.

6           Concurrent with the instant motion, defendant advised plaintiff of the requirements for

7   opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 42; *see*

8   *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir.

9   1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409

10  (9th Cir. 1988).

11  **III.    Analysis**

12          It is undisputed that, at the time of the conduct alleged herein (in 2010), plaintiff was a

13  civil detainee, committed pursuant to California's Sexually Violent Predator Act ("SVPA") and

14  housed at the Solano County Jail.  *See* ECF No. 42-1, Defs.' P.'s & A's ISO Defs.' Mot. for

15  Summ. J., at 8 (asserting that plaintiff was a civil detainee); ECF No. 47, Pl.'s Opp'n to Defs.'

16  Mot. for Summ. J. (not disputing that plaintiff was a civil detainee).

17          Defendant Corrine Cuppy (named herein as defendant "Corey") was a licensed

18  Physician's Assistant who provided care to plaintiff at the relevant time.  ECF No. 45, Decl. of

19  Karina Purcell ISO Defs.' Mot. for Summ. J. (hereinafter "Purcell Decl.") ¶ 3.  Defendant

20  Firman was a physician who provided medical care to plaintiff.  *Id.*; ECF No. 50, Decl. of James

21  W. Firman ISO Defs.' Mot. for Summ. J. (hereinafter "Firman Decl.") ¶ 2.  Defendant Cordero

22  was the Director of Nursing at the jail.  Purcell Decl. ¶ 3.

23          The federal Constitution's 14th Amendment governs claims by SVPA detainees

24  regarding the conditions of their confinement.  *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir.

25  2004); *see Youngberg v. Romeo*, 457 U.S. 307, 312 n.11, 324 (1982).  That Amendment entitles

26  civilly-committed individuals to more considerate treatment and conditions of confinement than

1   the Eighth Amendment's prohibition on cruel and unusual punishments guarantees to criminal

2   convicts. *Youngberg*, 457 U.S. at 322; *Jones*, 393 F.3d at 931-32. "At a bare minimum," a civil

3   detainee "cannot be subjected to conditions that amount to punishment." *Jones*, 393 F.3d at 932

4   (internal quotation marks omitted). Punitive conditions may be shown where (1) the challenged

5   conduct was expressly intended to punish or (2) the challenged conduct served a non-punitive

6   purpose but that purpose could have been served by "so many alternative and less harsh

7   methods." *Id.* (internal quotation marks omitted).

8        Although civil detainees must be afforded more considerate treatment under the 14th

9   Amendment than criminal convicts are afforded under the Eighth Amendment, the contours of

10   the Eighth Amendment are better defined and can provide a useful barometer for measuring

11   allegedly unconstitutional conduct. *Hydrick v. Hunter*, 466 F.3d 676, 699 (9th Cir. 2006). For

12   example, conduct that would violate the Eighth Amendment rights of a criminal convict by

13   definition also violates the 14th Amendment rights of a civil detainee. *Id.*

14        Plaintiff's claim alleges the denial of necessary medical treatment. Courts have not come

15   to a uniform conclusion as to whether the Eighth Amendment's "deliberate indifference"

16   standard applies to medical care claims raised by civil detainees or whether a different standard

17   applies in light of *Youngberg*'s and *Jones*'s holdings that civil detainees are entitled to more

18   considerate treatment than criminal convicts (and thus the Eighth Amendment standard can only

19   be used as a barometer of clearly unconstitutional conduct). *See Brainberg v. Monterey County*,

20   496 Fed. Appx. 747, 748 (9th Cir. 2012) (upholding summary judgment granted to a defendant

21   because the plaintiff, who was awaiting civil commitment under the SVPA at the time of the

22   alleged constitutional violation, failed to show a disputed material fact as to whether defendant

23   was deliberately indifferent to her serious medical needs); *Irvin v. Baca*, 472 Fed. Appx. 773,

24   774 (9th Cir. 2012) (applying the deliberate indifference standard in affirming the dismissal of a

25   civil detainee's medical care claim); *Brinkley v. Ahlin*, No. 1:09-cv-01858-MJS (PC), 2012 U.S.

26   Dist. LEXIS 42968, at *8-12 (E.D. Cal. Mar. 28, 2012) (finding the deliberate indifference

6

standard inapplicable to the civil-detainee plaintiff's medical care claim and concluding that, under the 14th Amendment, medical decisions made regarding a civil detainee must be supported by "professional judgment"); *Leonard v. Bonner*, No. CIV S-02-2023 LKK EFB P, 2007 U.S. Dist. LEXIS 64680, at *9-15 (E.D. Cal. Aug. 31, 2007) (concluding that the deliberate indifference standard did not apply to the civil-detainee plaintiff's medical care claim and instead analyzing the claim under the "punitive" language articulated in *Jones*).  The emerging consensus in the Ninth Circuit appears to be that the Eighth Amendment's deliberate indifference standard also applies to 14th Amendment medical care claims brought by civil detainees.  *See Brainberg*, 496 Fed. Appx. at 748; *Irvin*, 472 Fed. Appx. at 774; *Sullivan v. Ryan*, No. 11-17506, 2013 U.S. App. LEXIS 166, at *2-3 (9th Cir. Dec. 19, 2012) (applying the deliberate indifference standard to a medical care claim raised by an individual being confined while awaiting commitment proceedings under the SVPA); *Poe v. Cordero*, 141 Fed. Appx. 625, 626 (9th Cir.) (affirming dismissal of an SVPA committed plaintiff's medical care claim where plaintiff failed to allege facts that would show deliberate indifference).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Jett*, 439 F.3d at 1096.  An officer has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  Deliberate indifference may be manifested by a prison official's intentional interference with a prisoner's medical treatment.  *Jett*, 439 F.3d at 1096.

A defendant's negligence does not constitute deliberate indifference (thus, conduct that falls within the standard of care also necessarily comports with the Eighth Amendment).  *Estelle*, 429 U.S. at 106.  Nor does a plaintiff's general disagreement with the treatment he received.  *Id.*;

1    *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838 F.2d

2    390, 394 (9th Cir. 1988).  Evidence that medical caregivers disagreed as to the need to pursue

3    one course of treatment over another is also insufficient, by itself, to establish deliberate

4    indifference.  *Jackson*, 90 F.3d at 332.  Rather, the plaintiff must show that defendants were

5    aware of the risk of harm and that their response to the risk was medically unacceptable under

6    the circumstances.  *Id.*

7         Plaintiff's opposition to the motion for summary judgment sheds helpful additional light

8    on plaintiff's sparse allegations.  Plaintiff alleges two instances in which he was denied

9    necessary medical care.  First, plaintiff claims that defendant Cuppy wrongfully canceled a

10   radiation appointment scheduled for April 16, 2010, which delayed plaintiff's necessary

11   radiation treatment for two months.  ECF No. 47 at 6-7.  Second, plaintiff claims that he was

12   denied care for the next two-to-two-and-a-half months, and that as a result he experienced a

13   painful bladder neck stricture for which he had to receive emergency treatment.  *Id.* at 2, 6.

14   According to plaintiff, he submitted a medical request to be seen for serious pain during this

15   time, but the request was ignored.  *Id.* at 9.

16        Defendants argue that summary judgment is appropriate because the evidence shows that

17   plaintiff was provided with medical treatment that fell within the standard of care.  In support of

18   that argument, defendants have submitted the declaration of Dr. John Levin, a physician board-

19   certified in emergency medicine with experience in: (1) referring patients suspected of suffering

20   from prostate diseases to specialists and (2) the kinds of complications that can arise from the

21   surgical and/or radiological treatment of prostate diseases.[2]  ECF No. 43, Decl. of John Levin

22

23        [2] Plaintiff argues that the court should not consider Dr. Levin's declaration because
     defendants did not disclose Dr. Levin to plaintiff under Federal Rule of Civil Procedure 26(a)(1)
     and (2).  This argument fails because neither subsection of Rule 26 required defendants to

24   disclose Dr. Levin.  Rule 26(a)(1), which requires litigants to make certain disclosures without a
     discovery request, expressly does not apply to actions initiated by an unrepresented person in the

25   custody of a state or state subdivision.  Fed. R. Civ. P. 26(a)(1)(B)(iv) (exempting from the
     initial disclosure rules "an action brought without an attorney by a person in the custody of . . . a

26   state, or a state subdivision.").  Plaintiff is in state custody, having been civilly committed under

                                        8

1  ISO Defs.' Mot. for Summ. J. (hereinafter "Levin Decl.") ¶ 1.  Dr. Levin's declaration provides a

2  summary of plaintiff's medical records detailing, among other things, plaintiff's diagnosis with

3  prostate cancer, his subsequent prostate surgery and radiation, and jail staff's referrals of plaintiff

4  to outside care providers for that cancer treatment.  *Id.* ¶¶ 2-5.

5       According to defendants and Dr. Levin, defendant Cuppy canceled plaintiff's April 16,

6  2010 radiation appointment because plaintiff told her he was not sure he wanted to proceed with

7  radiation treatment.  *Id.* ¶ 5(j).  Plaintiff's medical records contain a note dated April 9, 2010

8  indicating that the appointment was canceled at defendant Cuppy's direction because "[i]nmate

9  indecisive if he wants this done."  ECF No. 45-2 at 5.  The note further states that defendant

10 Cuppy would contact plaintiff's outside urologist, Dr. Nabil Athanassious.  *Id.*  Plaintiff's

11 records reveal that he was seen by Dr. Athanassious within 10 days and decided to proceed with

12 the radiation.  *Id.* at 4.  The same day that plaintiff reported that he wished to proceed with

13 radiation treatment, jail staff attempted to reschedule the radiation appointment by leaving a

14 voicemail message with the outside radiation provider.  *Id.*  Plaintiff's records show that the

15 appointment was eventually scheduled for May 4, 2010, but was later rescheduled several times

16 at the request of plaintiff's outside care providers.  *Id.* at 4, 2; ECF No. 45-1 at 23, 22, 21; Levin

17 Decl. ¶¶ 5(j), (*l*).

18      Plaintiff states that he merely told defendant Cuppy that the side effects of radiation

19 "sounded scary" and that she should not have canceled the appointment.  ECF No. 47 at 7.

20 /////

21 ─────────────

22 the SVPA, and has brought this case without an attorney.  Further, Rule 26(a)(2), which requires
disclosure of expert witnesses, does not require the disclosure until one of the following

23 happens: (1) the court orders the disclosure, (2) a trial date has been set, or (3) another party has
submitted expert evidence.  Fed. R. Civ. P. 26(a)(2)(D).  None of those events has occurred in

24 this case.  Accordingly, Rule 26(a) did not require defendants to disclose Dr. Levin to plaintiff
before submitting his declaration in support of their motion for summary judgment.  *London v.*

25 *Williams*, No. 07-15631, 2007 U.S. App. LEXIS 4588, at *2-3 (9th Cir. Mar. 6, 2009) (holding
that the district court properly concluded that defendants were not obligated to disclose an expert

26 witness upon whose declaration the court relied in granting summary judgment because plaintiff
was in custody and without an attorney and no trial date had been set).

Plaintiff has submitted no evidence, however, that defendant Cuppy failed to adequately respond to his need for cancer treatment.  Taking all inferences in plaintiff's favor, the evidence at best shows that defendant Cuppy misunderstood plaintiff's wishes as to how he wanted to proceed with his cancer treatment.  Such a good-faith misunderstanding does not amount to deliberate indifference.  *E.g., Davis v. Ramen*, No. 1:06-cv-01216-AW-SMS PC, 2011 U.S. Dist. LEXIS 61829, at *39-40 (E.D. Cal. June 9, 2011) (finding that a defendant's misunderstanding as to when plaintiff needed his medication did not constitute deliberate indifference).

Furthermore, the undisputed evidence shows that jail staff did not delay rescheduling plaintiff's radiation appointment, but rather acted to do so 10 days after the appointment was canceled.  Although plaintiff claims that he suffered from "other painful ailments such as urinary tract infections" due to the delay in obtaining radiation (ECF No. 47 at 12), he has submitted no evidence substantiating that claim.  Plaintiff's medical records show that further delays were the result of outside care providers' requests to reschedule, not any conduct by any defendant in this action.  Additionally, plaintiff has submitted no evidence that suggests that defendant Cuppy canceled the appointment for a punitive purpose.  Accordingly, plaintiff has not raised a triable issue of material fact necessitating trial on his claim that defendants violated his 14th Amendment rights by canceling his April 16, 2010 radiation appointment or delaying his subsequent radiation treatment.

Plaintiff has also failed to raise a triable issue of material fact on his remaining claim that he was denied medical treatment from April 9, 2010 for two-or-so months.  Plaintiff's medical records reveal that he was seen by defendant Cuppy on April 19, 2010; she recorded that plaintiff made no complaints and wished to proceed with radiation therapy.  ECF No. 45-2 at 4. Defendant Firman saw plaintiff on May 6, 2010 and recorded that he advised plaintiff to follow the advice of his urologist.  *Id.* at 2.  Additional chart notes document various doctor's orders and comments regarding plaintiff's treatment, prescriptions, outside appointments, and other medical needs throughout the months of May and June 2010.  ECF No. 45-1 at 2-3, 14-23; ECF No. 45-2

at 1-3.  During the same time period, plaintiff was referred to outside medical providers for his cancer treatment, including radiation appointments during May and June 2010.  ECF No. 45-1 at 20; ECF No. 45-3 at 8.

On June 10, 2010, plaintiff submitted a request for medical care, stating that he was in pain from the radiation and "having a problem holding things in."  ECF No. 47 at 32.  Plaintiff was seen by both his outside oncologist, Dr. Christian Anderson, and--according to defendant Firman--by Firman four days later.  ECF No. 44-1 at 3; ECF No. 45-1 at 18-19.  Dr. Anderson noted that plaintiff reported a burning sensation at the start of stream when plaintiff delayed urination but "good flow" during the four-to-five times plaintiff urinated during the night.  ECF No. 44-1 at 3.

Plaintiff disputes that he was examined by defendant Firman on June 14, 2010. According to plaintiff, the chart note is stamped "June 8, 2010."  However, Dr. Firman declares that the stamp indicates that the preceding entry in the chart, from June 4, 2010, was reviewed by Dr. Firman on June 8, 2010.  ECF No. 50, Decl. of James Firman ISO Defs.' Mot. for Summ. J. (hereinafter "Firman Decl.") ¶ 3.  The June 14 entry is signed by Dr. Firman himself on the following page.  ECF No. 45-1 at 18; Firman Decl. ¶ 4.  Plaintiff also claims that he could not have been seen by Dr. Firman on June 14, 2010 because he would have been in the holding cell after returning from his radiation appointment.  Defendants have submitted evidence, however, that plaintiff was in the jail and available for an appointment with Dr. Firman at 4 p.m. (the time noted by Dr. Firman in plaintiff's chart).  ECF No. 49.  While plaintiff disputes whether he was, in fact examined on that date, he does not expressly state from personal knowledge that he was never seen by Firman on June 14, 2010.  Rather, he argues that due to customary jail procedure, he would not have been available on that date for an exam.  He does not say he remembers that date and he did not receive an exam.  ECF 47 at 4-5.  Defendants replied with evidence showing that plaintiff was in fact available for an exam on that date and was in fact examined by defendant Firman on that date.  ECF Nos. 49, 50.  On the basis of the current record, no

reasonable factfinder could look at the evidence and conclude that, not withstanding Dr. Firman's express and specific testimony to the contrary, Firman did not examine plaintiff on this date. Absent such evidence, the dispute that plaintiff raises is simply not genuine and cannot defeat summary judgment. *Celotex,* 477 U.S. at 323; *Anderson*, 477 U.S. at 248, 252. Nor does the dispute appear to be material. Plaintiff was seen by his outside oncologist on that date as well, which refutes his claim that jail medical personnel ignored his requests for medical care during this period.

Plaintiff claims that defendant Firman should have diagnosed him with a bladder neck stricture on June 14, 2010 and catheterized plaintiff based on what plaintiff had reported to Dr. Anderson the same day. ECF No. 47 at 5. Plaintiff was later diagnosed with bladder neck stricture on June 22, 2010 while at his radiation appointment with Dr. Anderson. ECF No. 45-3 at 11; ECF No. 44-1 at 9.

Plaintiff has submitted no evidence substantiating his claim that the burning during urination he was experiencing was a symptom of bladder neck stricture, however, or that failure to make such a diagnosis on June 14, 2010 breached the standard of care. Plaintiff was also seen by Dr. Anderson on that day, and Dr. Anderson did not diagnose bladder neck stricture based on plaintiff's burning symptom or determine that plaintiff required catheterization. In fact, when plaintiff was diagnosed with the condition on June 22, Dr. Anderson charted that plaintiff had a sudden onset of pain "within the last 24 hours," well after plaintiff's June 14 appointment with defendant Firman. ECF No. 44-1 at 9.

Plaintiff declares that Dr. Athanassious has told him that all persons who have their prostates removed should be catheterized and that "the failure to treat someone when they are complaining of the symptoms of burning sensation when trying to void does not comport with the applicable standards of medical care." ECF No. 47 at 35-36. Even if the court were to

/////

/////

consider this hearsay[3] evidence, it shows only that catheterization is standard when a person's prostate is removed and that urinary burning should be treated in some fashion. Plaintiff has not submitted evidence that he was not catheterized when his prostate was removed in November 2009. *See* ECF No. 45-3 at 13-15. Dr. Athanassious's purported statements do not show that plaintiff needed to be *catheterized* to treat the burning symptom or that defendant Firman should have suspected bladder neck stricture from that symptom. Plaintiff's burning sensation was, in fact, treated by Dr. Anderson, who prescribed pyridium. ECF No. 44-1 at 3; Nat'l Inst. of Health "MedlinePlus", http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682231.html (last checked June 4, 2013) (pyridium is used to treat urinary tract pain, burning, irritation, and discomfort).[4]

On the other hand, defendants have submitted Dr. Levin's declaration, which attests that the treatment plaintiff received from defendants was "well within the applicable standard of care." Levin Decl. ¶ 7. Furthermore, Dr. Levin attests that jail staff coordinated plaintiff's specialized cancer treatment with outside providers who provided exemplary cancer and post-surgical treatment. *Id.* In the face of this evidence, no rational trier of fact could conclude that defendants were deliberately indifferent to plaintiff's medical needs based solely on plaintiff's personal and non-expert opinion that defendant Firman should have diagnosed him with a bladder neck stricture on June 14, 2010 and the purported testimony of Dr. Athanassious described above. Nor has plaintiff submitted any evidence that would indicate that any defendant acted with a punitive purpose. Thus, there is no triable issue of material fact that defendants violated plaintiff's 14th Amendment right to adequate medical care by denying him care for two months or failing to diagnose him with bladder neck stricture on June 14, 2010.

Plaintiff has sued the remaining defendant, defendant Cordero, because she responded to a grievance he filed as the jail's "medical supervisor." ECF No. 47 at 3. Defendants argue that

---

[3] Dr. Athanassious is not a party defendant.

[4] The court takes judicial notice of the National Institute of Health's online drug information service entry on pyridium under Federal Rule of Evidence 201(b)(2).

1    defendant Cordero should be dismissed because she was not a "medical supervisor" at the jail as

2    plaintiff alleges, but rather the director of nursing who performed administrative functions and

3    did not issue doctor's orders.  ECF No. 42-1 at 2; Purcell Decl. ¶ 2.

4         It is undisputed that defendant Cordero was involved in plaintiff's care by responding to

5    a grievance filed by plaintiff claiming that jail staff had cancelled his outside medical

6    appointments.  Purcell Decl. ¶ 2.  Plaintiff argues that, because the grievance form indicates that

7    defendant Cordero was a "medical supervisor," she is liable for the denial of medical care he

8    alleges in his complaint.  ECF No. 47 at 3, 21 (plaintiff's grievance).  Plaintiff does not dispute

9    defendants' assertions that defendant Cordero's job was to oversee assignment and staffing of

10    nurses and that she did not issue physician's orders with respect to plaintiff's care.  ECF No. 42-

11    1 at 2.  The disagreement over defendant Cordero's role is immaterial, however, because plaintiff

12    has not raised a triable issue of material fact that defendant Cordero (or any other defendant)

13    denied him care.  Plaintiff has produced no evidence that defendant Cordero's conclusion in

14    reviewing his appeal – that plaintiff's outside appointments had been rescheduled at the request

15    of his outside care providers rather than jail staff – was erroneous or that it caused him to be

16    denied necessary care.  In fact, the evidence described above shows that plaintiff received

17    ongoing adequate medical care.

18 **IV.     Order**

19         For all of the above reasons, the January 2, 2013 motion for summary judgment (ECF

20    No. 42) is granted, and the Clerk is directed to enter judgment in favor of defendants and close

21    the case.

22    Dated:  July 29, 2013.

23

24                      EDMUND F. BRENNAN
                     UNITED STATES MAGISTRATE JUDGE

25

26